J-S77045-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: A.S.B., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: J.E.B., FATHER | No. 2387 EDA 2014 |

Appeal from the Decree entered July 18, 2014,
in the Court of Common Pleas of Philadelphia County, Family
Court, at No(s): CP-51-AP-0000473-2013

BEFORE:  STABILE, JENKINS, and STRASSBURGER*, JJ.

MEMORANDUM BY STRASSBURGER, J.:        **FILED JANUARY 16, 2015**

J.E.B. (Father) appeals from the decree entered July 18, 2014, in the Court of Common Pleas of Philadelphia County, which terminated involuntarily his parental rights to his minor son, A.S.B. (Child), born in March of 2012.[1]  We affirm.

The trial court summarized the relevant factual and procedural history of this matter as follows.

> On March 7, 2012, the Department of Human Services [(DHS)] received a General Protective Services (GPS) report alleging that [M]other moved to Philadelphia to avoid DYFS attempts to place the child.  …  Mother admitted using Thorazine, Ativan and Vicodin during her pregnancy.  Mother has a history of bipolar disorder, anxiety and drug abuse.  Additionally, [M]other had a history of hospitalizations for mental health issues.  The report was substantiated.

---

* Retired Senior Judge specially assigned to the Superior Court.

[1] The trial court entered a separate decree that same day, in which it terminated involuntarily the parental rights of Child's mother, C.J.B. (Mother).  Mother is not a party to this appeal.

On March 9, 2012, [F]ather was released from Belmont Center for Comprehensive Treatment. [F]ather was diagnosed with depression and suffered from suicidal ideations.

[Child] was discharged from the Hospital of the University of Pennsylvania (HUP) on March 12, 2012. [DHS] obtained an Order of Protective Custody (OPC) for [Child] and placed the child in a foster home through Children's Services, Inc.

On March 14, 2012, a shelter care hearing was held. [C]hild was temporarily committed to DHS. Mother and [F]ather were granted supervised visits at the agency.

On March 22, 2012, DHS learned that [F]ather had a medical appointment for medication management and out-patient therapy through Horizon House, Inc[.] for mental health treatment.

DHS held a Family Service Plan meeting on April 9, 2012. The parental objectives were the following: (1) the parents will participate in a mental health evaluation; (2) the parents will comply with all treatment recommendations including therapy and medication prescribed; (3) the parents will sign authorization forms to permit the Children and Youth Division (CYD) to obtain copies of evaluations and progress reports; (4) the parents will occupy and locate suitable housing with operable utilities; (5) the parents will maintain regular visits with the child; (6) the parents will not use physical violence or threats to resolve family conflicts; (7) the parents will participate in an evaluation for drug and alcohol abuse; (8) the parents [will] maintain a drug free status and complete 5 successful drug screens. Father did not participate in the meeting. Mother refused to sign the FSP.

On May 23, 2012, an adjudicatory hearing was held. [Child] was committed to DHS and adjudicated dependent.

On September 26, 2012, a permanency review hearing was held. Father missed 3 visits since he was released from prison. [F]ather was referred to the Clinical Evaluation Unit (CEU) for a forthwith drug screen and assessment.

Trial Court Opinion, 9/12/2014, at 1-2 (unnumbered).

On August 23, 2013, DHS filed a petition to terminate Father's parental rights to Child involuntarily. A termination hearing was held on July 18, 2014. Following the hearing, the trial court entered its decree terminating Father's rights. Father timely filed a notice of appeal, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

Father now raises the following claims for our review.

1. Whether the trial court erred and/or abused its discretion by terminating the parental rights of [F]ather, [] pursuant to 23 Pa. C.S.A. sections 2511(a)(1) where [F]ather presented evidence that he tried to perform his parental duties. Additionally, [F]ather visited [Child] throughout [the] time he was in foster care[?]

2. Whether the trial court erred and/or abused its discretion by terminating the parental rights of [F]ather, [] pursuant to 23 Pa. C.S.A. sections 2511(a)(2) where [F]ather presented evidence that he has remedied his situation by completing anger management, receiving mental health treatment and has housing. Additionally, [F]ather is employed full time[?]

3. Whether the trial court erred and/or abused its discretion by terminating the parental rights of [F]ather, [] pursuant to 23 Pa. C.S.A. sections 2511(a)(5) where evidence was provided to establish that the child was removed from the care of the [M]other. Additionally, [F]ather visited with [Child] and maintained contact with him over the last several months[?]

4. Whether the trial court erred and/or abused its discretion by terminating the parental rights of [F]ather, [] pursuant to 23 Pa. C.S.A. sections 2511(a)(8) where evidence was presented to show that [F]ather is capable of caring for his child after successfully completing mental health treatment. Additionally, [F]ather visited with [Child] and maintained contact with him over the last several months[?]

5. Whether the trial court erred and/or abused its discretion by terminating the parental rights of [F]ather, [] pursuant to 23 Pa. C.S.A. sections 2511(b) where evidence was presented to establish that [C]hild had a close bond with [F]ather[?]

Father's Brief at 7.

We consider Father's claims mindful of the following.

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Our courts apply a two-part analysis in reviewing a decree terminating parental rights. As we explained in *In re L.M.*, 923 A.2d 505 (Pa. Super. 2007),

[i]nitially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention

- 4 -

paid to the effect on the child of permanently severing any such bond.

*Id.* at 511 (citations omitted).

Here, the trial court terminated Father's rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b). "This court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of Section 2511(a)." *In re J.F.M.*, 71 A.3d 989, 992 (Pa. Super. 2013) (citing *In re B.L.W.,* 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*), *appeal denied,* 863 A.2d 1141 (Pa. 2004)). For the purposes of our analysis, we focus on subsection 2511(a)(2). The statute provides, in relevant part, as follows.[2]

> **(a) General Rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> ***
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the

---

[2] We note that the trial court concluded incorrectly that Father's parental rights could be terminated under subsections 2511(a)(5) and (a)(8). Both of these subsections require that the subject child have "been removed from the care of the parent by the court or under a voluntary agreement with an agency" in order to be applicable. 23 Pa.C.S. § 2511(a)(5), (8). Because Child was never in Father's care, his parental rights cannot be terminated under these Sections. *See In re C.S.*, 761 A.2d 1197, 1200 (Pa. Super. 2000) (*en banc*) (concluding that termination was inappropriate under subsectionsections 2511(a)(5) and (8) "because the record reflects that C.S. was never in Appellant's care and, therefore, could not have been removed from his care."); *In re Z.P.*, 994 A.2d 1108, 1123 n.2 (Pa. Super. 2010) (same).

incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

***

**(b) Other considerations.—**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(2), (b).

We first address whether the trial court abused its discretion by terminating Father's parental rights pursuant to subsection 2511(a)(2).

In order to terminate parental rights pursuant to 23 Pa.C.S.A § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

***In re Adoption of M.E.P.***, 825 A.2d 1266, 1272 (Pa. Super. 2003) (citation omitted)).  "The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct.  To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties."  ***In re A.L.D.***, 797 A.2d 326, 337 (Pa. Super. 2002) (citations omitted).

Instantly, the trial court concluded that Father's parental rights should be terminated because, *inter alia*, Father failed to complete mental health treatment, anger management treatment, or domestic violence training, and because Father attended visits with Child only 50% of the time. Trial Court Opinion, 9/12/2014, at 3-4 (unnumbered). Father disputes the trial court's findings, arguing that he completed anger management and mental health treatment, and that he visited with Child "as consistently as he could." Father's Brief at 15-17. Father also contends that DHS failed to make reasonable efforts to reunify him with Child, and that he was not aware of his FSP goals. *Id.* at 16-18. Father emphasizes that he is employed and has appropriate housing for Child. *Id.* at 15-17.

After a thorough review of the record in this matter, we conclude that the trial court did not abuse its discretion by terminating Father's parental rights involuntarily pursuant to subsection 2511(a)(2). During the termination hearing, DHS worker, Tracey Campbell, explained that Father is employed and resides with his biological mother. N.T., 7/18/2014, at 17. Ms. Campbell testified that she never received any documentation indicating that Father had completed or was completing mental health treatment or domestic violence training. *Id.* at 17-18. Similarly, while Father informed Ms. Campbell that he had completed anger management treatment, Ms. Campbell testified that Father did not provide her with a certificate confirming his story. *Id.* at 18. Agency worker, Brenda Calhoun, explained

that Father attends visits with Child about twice per month, which amounts to half of the offered visits. *Id.* at 33, 38-39.

Accordingly, the record supports the trial court's finding that, at the time of the termination hearing, Father had failed for over two years to complete the FSP objectives necessary to obtain custody of Child. Father's actions, or lack thereof, show that he is presently incapable of being a parent. Father's incapacity has left Child without parental care and control, and it was reasonable for the trial court to conclude that Father cannot, or will not, remedy this incapacity.

While Father contends that he was unaware of his FSP objectives, this argument does not entitle him to relief. Admittedly, Ms. Campbell stated on cross-examination that there had been a total of only three FSP meetings in this case: on April 9, 2012; March 23, 2013; and in October of 2013, after the petition to terminate Father's parental rights had already been filed. *Id.* at 26-27. She conceded that she did not know if Father had been invited to any of the FSP meetings. *Id.* at 27-29. She also stated that she did not know if Father had attended the two earlier FSP meetings. *Id.* at 29. Ms. Campbell did state that she believed that Father was aware of his FSP goals because she "had plenty of time to talk out in the hallway" with Father during a continuance hearing. *Id.* at 28. This hearing took place during February of 2014, also well after the filing of the petition to terminate Father's parental rights. *Id.*

However, during Father's testimony, his counsel asked him what he had done to achieve his FSP objectives. *Id.* at 43. Father did not express confusion as to what his objectives were or how to complete them, nor did he complain that he had only recently identified his objectives. Instead, Father claimed that he had successfully completed an anger management class "last year," but that he did not have a certificate with him at the time. *Id.* He stated that he had e-mailed a copy of the certificate to his former DHS worker. *Id.* Father also admitted that he knew that obtaining mental health treatment was one of his objectives. *Id.* He claimed that he had been attending therapy, but that he was discharged because it conflicted with his work schedule, and because the therapist felt that treatment was no longer needed. *Id.* at 44. The trial court was free to reject Father's claims as incredible, and to infer from this testimony that Father was aware of his FSP objectives throughout the case.

Finally, we note that the issue of whether DHS provided Father with reasonable reunification efforts is not determinative in this matter. Our Supreme Court has expressly rejected the contention that reasonable efforts are necessary to support a termination decree under Section 2511(a)(2). *See In re D.C.D.*, 2014 WL 7089267 (Pa. filed December 15, 2014). In *D.C.D.*, the Court analyzed the language of subsection 2511(a)(2), as well as Section 6351 of the Juvenile Act, 42 Pa.C.S. § 6351. The Court reasoned that, while "reasonable efforts may be relevant to a court's consideration of

both the grounds for termination and the best interests of the child," neither of these provisions, when read together or individually, requires reasonable efforts. *Id.* at *8-9 (citation omitted). The Court also concluded that reasonable efforts were not required to protect a parent's constitutional right to the care, custody, and control of his or her child. *Id.* at 10-11. No relief is due.

We next consider whether the trial court abused its discretion by terminating Father's parental rights under Section 2511(b).

> Subsection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. In *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa. Super. 2005), this Court stated, "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, we instructed that the trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case.

*In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010) (some citations omitted).

Here, the trial court concluded that Child would not suffer irreparable harm if Father's parental rights were terminated, and that termination would be in Child's best interest. Trial Court Opinion, 9/12/2014, at 5 (unnumbered pages). The court reasoned that Child has never resided with Father, and that Child "has not had an opportunity to bond with [F]ather due

to [F]ather's lack of visitation." *Id.* at 4-5. The court noted that Child is bonded with his foster family. *Id.* Father argues that he is bonded with Child and does well during visits, and that termination of his parental rights could have a detrimental effect on Child. Father's Brief at 18-19.

We again conclude that the trial court did not abuse its discretion. Ms. Campbell testified that DHS obtained protective custody of Child several days after his birth, while Child was still in the hospital. N.T., 7/18/2014, at 8-11. At the time of the termination hearing, Child had been in the same preadoptive foster home for a year and approximately nine months. *Id.* at 10-11. Ms. Campbell stated that she had observed Child in his current foster home, and that Child "has a really close bond" with his foster mother and calls her "mom." *Id.* at 20. Ms. Campbell opined that Child would not be irreparably harmed if Father's parental rights were terminated, and that it would be beneficial for Child to find permanency in his current environment where he appears to feel very comfortable. *Id.* at 22-23.

Similarly, Ms. Calhoun testified that she had observed Child with his foster family on three occasions. *Id.* at 32-33. She noted that Child is "very engaged" with his foster mother and her son, and "[i]t's like he's part of the family there. They treat him like he's just another brother." *Id.* at 33. She testified that Child starts his visits with Father "very reserved, and kind of withdrawn." *Id.* at 35, 40. It takes Child about 15 to 20 minutes to "warm up and get more interactive." *Id.* Ms. Calhoun stated that Father is

appropriate during visits and tries to engage with Child. *Id.* at 40. Father testified that he had been missing visits with Child, but claimed that the visits were missed because of "stomach bugs being in the home," and because of emergencies at work. *Id.* at 45. He stated that he always notifies the agency when he is going to miss a visit. *Id.*

Thus, the record confirms that there was no evidence presented during the termination hearing to indicate that Father and Child have a bond, other than the fact that Father has visited with Child twice per month. Instead, the testimony revealed that Child is bonded with his foster family, with whom he has lived for the majority of his life. It was reasonable for the court to determine that it would be in Child's best interest for Father's parental rights to be terminated, and that Child would not suffer irreparable harm.

Accordingly, because we conclude that the trial court did not abuse its discretion by terminating Father's parental rights involuntarily pursuant to subsections 2511(a)(2) and (b), we affirm the decree of the trial court.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/16/2015

- 12 -